| | | |
|---|---|---|
| ELVIN COPP and RANDALL COPP | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:18-cv-00181-JAW |
| WILLIAM SHANE, WILLIAM LONGELY, and TOWN OF CUMBERLAND, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR LACK OF JURISDICTION

In conjunction with state tort claims, Plaintiffs, who are town residents, brought this suit pursuant to 42 U.S.C. 1983 and the Maine Civil Rights Act as well as a Maine Freedom of Access Act claim against a Maine municipality and two town employees seeking compensatory damages, punitive damages, injunctive relief, declaratory relief, and attorney's fees stemming from an alleged trespass on the construction site of one of the Plaintiff's single family residence. In this seemingly straightforward, but surprisingly complicated motion to dismiss, the Court concludes that the Plaintiffs' state tort claims are barred by the applicable statute of limitations, and that the federal and state constitutional claims either do not state a claim or are barred by qualified immunity. The Court remands the state freedom of access act claim to state court.

## I.    BACKGROUND

## A.     Procedural History

On March 27, 2018, Elvin and Randall Copp (the Copps), filed a complaint in Cumberland County Superior Court for the state of Maine alleging various state tort claims, violations of their United States and Maine constitutional rights, as well as a violation of the Maine Freedom of Access Act (FOAA) by the Defendants. *State Court Record,* Attach. 3 *Compl.* (ECF No. 2) (*2018 Compl.*). On May 7, 2018, the Defendants filed a Notice of Removal to this Court. *Notice of Removal* (ECF No. 1). On May 21, 2018, the Defendants moved to dismiss the Copps' complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). *Mot. to Dismiss for Failure to State a Claim and Mot. to Dismiss for Lack of Subject Jurisdiction* (ECF No. 4) (*Defs.' Mot.*). The Copps responded on June 11, 2018 and the Defendants filed their reply on June 25, 2018. *Resp. in Opp'n to Dismiss for Failure to State a Claim and Mot. to Dismiss for Lack of Subject Jurisdiction* (ECF No. 5) (*Pls.' Opp'n*); *Reply to Resp. in Opp'n to Dismiss for Failure to State a Claim and Mot. to Dismiss for Lack of Subject Jurisdiction* (ECF No. 6) (*Defs.' Reply*).

## B.     The Alleged Facts[1]

### 1.     The Parties

The Copps are residents of the town of Cumberland of Cumberland County, Maine. *2018 Compl.* ¶¶ 2-3. William R. Shane is the town manager of the town of

---

[1]     In considering a motion to dismiss, a court "accept[s] all well-pleaded facts in the complaint as true." *Gilk v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 36 (1st Cir. 2009)). A court also "construe[s] all reasonable inferences in favor of the plaintiff." *Sanchez*, 590 F.3d at 41.

Cumberland and William Longley is the code enforcement officer (CEO) for the town of Cumberland. *Id.* ¶¶ 5-6. The town of Cumberland is a Maine municipality. *Id.* ¶ 4.

### 2. Basis for Complaint

Elvin Copp owns a parcel of property (the Copp property) located off Pointer Way in Cumberland, as shown on town of Cumberland Tax Map R-07, Lot 57C. *Id.* ¶ 7. Around July 28, 2009, the Copps began construction of a single-family residence on the Copp property after acquiring their first building permit from Mr. Longley. *Id.* ¶ 11. Randall Copp has since supervised the construction of his single-family residence. *Id.* ¶ 8. The Copps were issued a building permit around May 8, 2014 for the single-family residence and they performed work continuously for 180 days. *Id.* ¶¶ 13-14.[2] The Copp property was posted "No Trespassing." *Id.* ¶ 15. Around August 5, 2015, without a request for inspection or authorization to enter the property, Randall Copp found Mr. Longley on the Copp property. *Id.* ¶ 16.

Before September 24, 2015, the Copps had requested that any town official enter the property in the presence of either of the Copps. *Id.* ¶ 17. On or about September 24, 2015, the Copps took a photo of Mr. Shane entering and exiting the Copp property when neither Elvin Copp nor Randall Copp was present. *Id.* ¶¶ 18-19.[3]

On or about October 27, 2015, the Copps received a Notice of Violation for

---

[2]     The town of Cumberland adopted an ordinance and the international residential code. *2018 Compl.* ¶ 12.
[3]     In or around February 2017, Mr. Longley contacted Randall Copp to request a site inspection. *2018 Compl.* ¶ 55.

Corrective Action (the Notice). *Id.* ¶ 20. The Notice stated that Mr. Longley had conducted a road inspection of the Copp property on September 24, 2015. *Id.* ¶ 21. This was the first Notice the Copps had received that Mr. Longley entered the Copp property on September 24, 2015. *Id.* The Notice was corrected on January 20, 2016 (Corrected Notice), and it cited a violation of Ordinance § 315-76(A) for "lack of progress or inspection during the 6 months after issuance, hence the permit has expired on or about 11-08-2014" but did not contain details as to how Mr. Longley made this determination over one year from the date of the alleged expiration. *Id.* ¶ 22.

The town board conducted a hearing concerning the Corrected Notice on February 11, 2016, as proscribed by § 315-77(D)(3) of the ordinance. *Id.* ¶ 23.[4] At this hearing, the Copps put forth their appeal, along with photographs, invoices, drawings and additional evidence, which included the testimony of Randall Copp, addressing the alleged violations contained in the Corrected Notice. *Id.* ¶ 24. Randall Copp testified that the camera he installed at the entrance of the property captured Mr. Shane entering and exiting the property on September 24, 2015 and that he had notified both Mr. Shane and Mr. Longley on two prior occasions that towns employees were not authorized to be on the Copp property without the presence of either himself or Elvin Copp. *Id.* ¶¶ 25-26. Randall Copp also testified with photographs that the

---

[4] The Copps do not identify the specific name of the town board which held the hearing. The Defendants presume the Copps are referring to the Cumberland Town Board of Adjustment and Appeals. *Defs.' Mot.* at 2. In light of the parties' respective filings, the Court refers to the Cumberland Town Board of Adjustment and Appeals as the "town board".

Copp property was posted "No Trespassing" prior to September 24, 2015. *Id.* ¶ 27.[5]

At the end of the Copps' presentation, the town board found that it lacked jurisdiction to determine issues of trespass. *Id.* ¶ 28. Counsel for the Copps objected to any evidence obtained by Mr. Longley from his road inspection, claiming it was improper and unlawfully obtained. *Id.* ¶ 29. Mr. Longley made several statements "regarding a proposed Consent Agreement and testified as to the intent and the motivation of the Plaintiffs with regards to said Consent Agreement" and subsequently, "introduced a copy of the unsigned Consent Agreement into evidence." *Id.* ¶¶ 30-31. The Copps view as improper Mr. Longley's statements about the Consent Agreement and his introduction of the unsigned agreement into evidence. *Id.*[6] The board accepted Mr. Longley's testimony derived from his unauthorized entry onto the Copp property. *Id.* ¶ 32.[7]

In his initial testimony, Mr. Longley conceded that progress may have been made during the six months following the issuance of the most recent building permit and that he had no evidence that a period of 180 days had lapsed since May 8, 2014 without continued progress. *Id.* ¶ 33. Mr. Longley also acknowledged that the Copps

[5]    Paragraph twenty-five states that the Copps took photographs of Mr. Shane entering and exiting the property on September 24, 2016. *2018 Compl.* ¶ 25. This appears to be a typographical error given the prior and subsequent allegations, and the Court assumes the correct date is September 24, 2015.

[6]    In their Complaint, the Copps allege that Mr. Longley "made several improper statements regarding a proposed Consent Agreement and testified as to the intent and the motivation of the Plaintiffs with regards to said Consent Agreement" and that Mr. Longley "improperly introduced a copy of the unsigned Consent Agreement." *2018 Compl.* ¶¶ 30-31. For purposes of ruling on this motion, the Court excludes "improper" and "improperly" as legal conclusions; however, the Court retains the allegation to reflect the Copps' view of Mr. Longley's actions.

[7]    The Copps' Complaint states "[t]he Board accepted testimony from the CEO [Code Enforcement Officer] derived from his unauthorized entries upon Plaintiffs posted land in violation of the Fourth Amendment's prohibition against unlawful searches and seizures on private lands." *2018 Compl.* ¶ 32. The Court modifies the allegation to omit the legal conclusions.

presented him with photos taken prior to the Corrected Notice but that he failed and refused to view the photos. *Id.* ¶ 34. Counsel for the Copps sought to cross-examine Mr. Longley, but the chair of the town board denied this request. *Id.* ¶ 35. The town board considered issues, testimony, and documents outside the scope of the Corrected Notice. *Id.* ¶ 36.[8]

The Copps provided testimony and documentation pursuant to § 315(C) of the ordinance, submitted a description of the intended use of the land and buildings, and provided further detail as Mr. Longley required, such as letters from both an engineering firm and an architect. *Id.* ¶ 42. Mr. Longley neither testified nor submitted evidence that the Copps knew or should have known that a demolition permit was required for the conversion of the manufactured office building to a single-family residence. *Id.* ¶ 44. The Copps relied on Mr. Longley's issuance of the building permit to proceed with the conversion in their application. *Id.* ¶ 45.

At the end of the hearing, a motion to adopt the corrective actions of the Corrected Notice was submitted and passed without a statement of findings or conclusions. *Id.* ¶¶ 37-38.[9] The town board determined that the Copps had made progress during the 180 days after May 8, 2014, the date the town issued the permit, and that the permit did not expire on November 8, 2014. *Id.* ¶ 46. While the town board concluded there was no violation of ordinance § 315-76(A) and no lapse in the

---

[8] The Copps' Complaint states "[t]he Board improperly considered issues, testimony and documents outside the scope of the Corrected NOV." *2018 Compl.* ¶ 36. The Court excludes "improperly" as a legal conclusion.

[9] The Copps state "[t]he Board erred in interpreting the Town's Ordinance § 315(C): Demolition permits"; "[t]he Board erred in failing to interpret and provide meaning to the uncertainty of Ordinance § 315(C)"; "Ordinance §315(C) lacks substance and definition and is, therefore void for vagueness." *2018 Compl.* ¶¶ 39-41. The Court excludes these statements as legal conclusions.

current building permit, the board continued the "Stop Work Order" that Mr. Longley implemented with the Corrected Notice "since no building permit is valid [,] no continued road construction is authorized or allowed until all violations have been corrected to the satisfaction of the Town of Cumberland." *Id.* ¶ 47. The town board required the Copps to request a "demolition permit or additional information to Mr. Longley" despite no notice from Mr. Longley that such a permit was required. *Id.* ¶ 48.[10] The board also enforced the demolition ordinance. *Id.* ¶ 49.[11] No notice of the board's decision was provided to the Copps or their counsel within seven days of this decision. *Id.* ¶ 50.

The Copps' request for reconsideration stated that the board's decision failed to apply the proper standard set forth in § 315-77(B)(1) of the ordinance. *Id.* ¶ 51. The Copps asserted the board failed and refused to determine whether Mr. Longley's decisions were in conformity with the town's ordinances, to interpret the meaning in cases of uncertainty as provided in ordinance § 315-77(B)(1), and to determine if Mr. Longley's entry on to the Copps' property was conducted in accordance with IRC-R § 104.6. *Id.* ¶¶ 52-53.

The Copps served a Notice of Claim pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S. § 8107 *et seq*, on the Defendants on or about March 29, 2016. *Id.*

---

[10]    The Copps' Complaint states "[t]he Board improperly interpreted the Ordinance § 315-76(C) to require the Plaintiffs to request a demolition permit or additional information to the CEO without any notice from the CEO that such a permit was required." *2018 Compl.* ¶ 48. The Court modifies the allegation to omit the legal conclusion.

[11]    The Copps' Complaint states "[t]he Board improperly enforced the Demolition Ordinance even though it lacked substantial detail such that is void for vagueness." *2018 Compl.* ¶ 49. The Court modifies the allegation to omit the legal conclusion.

¶ 54.  Around February 27, 2017, the Copps made a FOAA,[12] 1 M.R.S. § 400 *et seq*,

request regarding all records referencing their property specifically held by Mr.

Shane and Mr. Longley, and the Copps received an acknowledgement that their

request was received on or about March 2, 2017.  *Id.* ¶ 56.  The Copps made another

FOAA request on March 30, 2017.  *Id.* ¶ 57.  The Copps were not provided with

requested information and their request was denied.  *Id.* ¶ 58.

### C.  *Copp v. Town of Cumberland Board of Adjustment & Appeals*: The Rule 80B Appeal[13]

#### 1.  The 2016 Complaint

On March 25, 2016, Elvin Copp and Randall Copp filed a complaint in the

Cumberland County Superior Court for the state of Maine.  *Notice of Removal* Attach.

1, *Docket Entries* at 1, No. 2:16-cv-00213-JDL (ECF No. 1).  The Copps' 2016

Complaint contained 139 paragraphs and four counts. *Notice of Removal* Attach. 2,

*Compl.* at 1-13, No. 2:16-cv-00213-JDL (ECF No. 2) (*2016 Compl.*)  Many of the

factual allegations in the 2016 Complaint are identical to the factual allegations in

the 2018 Complaint now pending before the Court.  *Compare 2016 Compl.* ¶¶ 6-7, 12,

14, 16, 18-20, 22, 28-33, 36, 39-42, 50-51, 53-60, 62, 72-73, 78-80, 82, 89-90, *with 2018*

---

[12]    The Freedom of Access Act (FOAA) is the state of Maine counterpart to the federal Freedom of Information Act.

[13]    In their filings the Copps and the Defendants refer to *Copp v. Town of Cumberland Board of Adjustment & Appeals*, a case that was pending both in state and federal court.  *Defs.' Reply* at 2; *Pls.' Opp'n* at 3.  Under *Alternative Energy, Inc. v. St. Paul Fire & Marine Insurance Company*, 267 F.3d 30, 33 (1st Cir. 2001), a court may consider a narrow band of documents outside of a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) without converting the motion into a summary judgment motion.  *Id.* at 33 (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).  The exception is "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claims; or for documents sufficiently referred to in the complaint").  *Id.*; *see Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 88-89 (1st Cir. 2016).  Under Rule 12(b)(1), a court may consider matters outside the pleadings without converting the motion to a motion for summary judgment.  *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

*Compl.* ¶¶ 11-15, 17-21, 23-28, 30-53.

The 2016 Complaint contained four counts: (1) Count One—the 80B appeal, (2) Count Two—Due Process Violations in the Corrective NOV, (3) Count Three—Due Process Violations by the Board of Adjustment and Appeals, and (4) Count Four— Civil Rights Due Process Violations. *2016 Compl.* at 1-13. Count Two alleged that the Corrective NOV failed to provide them with "sufficient notice of the claims against them." *Id.* ¶ 93. Count Three alleged that the town board had violated their due process rights in the following ways: (1) by considering evidence improperly or unlawfully obtained by the town CEO and town manager, (2) by hearing evidence from the town CEO and manager beyond the alleged violations in the Corrective NOV, (3) by refusing to permit counsel for the Copps to cross-examine the CEO in violation of 30-A M.R.S. § 2691(3)(D), (4) by improperly allowing the CEO to submit documents not provided to Copps before the hearing, (5) by failing to include a statement of findings and conclusions in violation of 30-A M.R.S. § 2691(3)(E), (6) by failing to provide a written notice of its decision to the Copps within seven days of its decision in violation of 30-A M.R.S. § 129, and (7) by failing to provide findings of fact, conclusions of law, interpretation of the ordinances or any other written notice of its decision. *Id.* ¶¶ 121-30. Count Four alleged that the Defendants had deprived the Copps of a protected property interest without due process of law in violation of the Maine and United States Constitutions. *Id.* ¶¶ 137-39.

## 2. *Copp v. Town of Cumberland Board of Adjustment & Appeals*: The Prior Federal Case

The Copps' 2016 lawsuit against the town board briefly visited the federal

court before being remanded to state superior court. *Copp v. Town of Cumberland Board of Adjustment & Appeals*, No. 2:16-cv-00213-JDL. On April 22, 2016, the town board filed a notice of removal from state to federal court on the ground that the Copps' claims of constitutional violations were presumably pursuant to 42 U.S.C. § 1983. *Notice of Removal*. On June 10, 2016, the Copps filed a notice of voluntary dismissal, giving notice that they were voluntarily dismissing Counts II through IV of their Complaint to allow them to pursue their Rule 80B appeal in Maine Superior Court. *Pls.' Notice of Voluntary Dismissal Without Prejudice of Counts II-IV Pursuant to F. R. Civ. P. 41(a)(1)(a) (I)* (ECF No. 9). On June 29, 2016, the Copps moved to have the case remanded to state court, *Pls.' Mot. to Remand* (ECF No. 14), and on June 30, 2016, this Court remanded the case to the state of Maine Superior Court. *Order Granting an Unopposed Mot. to Remand to State Ct.* (ECF No. 15).

### 3. The Facts and Procedure Before the Superior and Supreme Court

This federal case is the second lawsuit in which the Copps have challenged the actions of the town of Cumberland Board of Adjustment & Appeals. In *Copp v. Town of Cumberland Board of Adjustment & Appeals*, No. AP-16-012, 2017 WL 1398185, at *1-2, 2017 Me. Super. LEXIS 75, at *1-5 (Mar. 9, 2017), a Maine state Superior Court Justice provided the background for this first lawsuit. Elvin Copp is the father of Randall Copp, and Elvin, not Randall, owns the parcel of land on Pointer Way in Cumberland, where the Copps have been building a single-family residence. *Id.*, 2017 WL 1398185, at *1, 2017 Me. Super. LEXIS 75, at *1. In July 2009, the Copps obtained their first building permit for the residence and began construction and

subsequently, the town CEO issued them a series of building permits. *Id.*, 2017 WL 1398185, at *1, 2017 Me. Super. LEXIS 75, at *2. On May 14, 2015, the CEO issued the permit that became the source of controversy for the first litigation. *Id.*

On January 20, 2016, the CEO issued the Copps a Corrected Notice of Violation Order for Corrective Action (NOV), which included a description of the violations the CEO observed while at the property on September 24, 2015, a stop work order, and the corrective action that the Copps were required to take before the town would reissue a building permit. *Id.*, 2017 WL 1398185, at *1, 2017 Me. Super. LEXIS 75, at *2-3. The CEO found that the construction did not conform with the plans the Copps had submitted for their permit. *Id.*, 2017 WL 1398185, at *1, 2017 Me. Super. LEXIS 75, at *3. On November 8, 2014, the building permit that the town had issued on May 8, 2014 expired because the Copps had made no progress over the six months. *Id.* The stop work order prohibited all construction on the property until the town was satisfied that the violations had been corrected and the town issued the NOV that required the Copps to take certain corrective actions before the town would reissue the building permit. *Id.*, 2017 WL 1398185, at *1-2, 2017 Me. Super. LEXIS 75, at *3-4.

On January 27, 2016, the Copps appealed the NOV to the town board. *Id.*, 2017 WL 1398185, at *2, 2017 Me. Super. LEXIS 75, at *4. In their appeal, they argued that their building permit had not expired, that the stop work order was not the proper remedy for the alleged violations, and the NOV should be dismissed because the CEO's entrance onto their property on September 24, 2015 was illegal.

*Id.*

On February 11, 2016, the town board heard the appeal. *Id.* The attorney for the Copps, Randall Copp, the CEO, counsel for the CEO and town, a concerned neighbor, and the town manager all made presentations to the town board. *Id.* The town board voted to uphold the NOV "except for the CEO's finding that the permit expired on November 8, 2014." *Id.* (alterations in original). On February 22, 2016, the Copps filed a motion for reconsideration pursuant to 30-A M.R.S. § 2691(3)(F). *Id.* The town's attorney opposed the motion and on March 10, 2016, the town board denied the motion for reconsideration. *Id.*, 2017 WL 1398185, at *2, 2017 Me. Super. LEXIS 75, at *4-5.

On March 25, 2016, the Copps filed an appeal pursuant to Maine Rule of Civil Procedure 80B. *Id.*, 2017 WL 1398185, at *2, 2017 Me. Super. LEXIS 75, at *5.

### 4.    Proper Party on Appeal

The Copps brought the Rule 80B appeal against the town board itself. Under Maine law, a zoning board of appeals "is not a proper party to an appeal in the Superior Court from its own decision." *Id.* (quoting *Boothbay Harbor v. Russell*, 410 A.2d 554, 559 (Me. 1980)). "The municipal officers or the CEO would be the proper defendants." *Id.* (citation omitted). The Superior Court Justice noted that the Copps had not moved to amend their complaint and the town board had not moved to dismiss the Rule 80B appeal, but she concluded that the appeal should be dismissed because it was moot. *Id.*, 2017 WL 1398185, at *3, 2017 Me. Super. LEXIS 75, at *5-6.

### 5. Mootness

The Superior Court Justice noted that the Copps had submitted "revised building plans, obtained a demolition permit, and adhered to the Board's required action in the NOV in order to have the stop work order lifted, which was achieved." *Id.*, 2017 WL 1398185, at *3, 2017 Me. Super. LEXIS 75, at *6. After reviewing the mootness doctrine, the Superior Court Justice wrote:

> In this case, plaintiffs complied with the decision that they appealed, and the Town has lifted the stop work order and issued plaintiffs a new permit. The demand for judgment in plaintiffs' complaint asks the court to remand this case to the Board for a new hearing. At this point, remand would not provide plaintiffs any effective relief to justify the application of limited judicial resources. Plaintiffs' claim is thus moot.

*Id.*, 2017 WL 1398185, at *4, 2017 Me. Super. LEXIS 75, at *8. The Court then considered and rejected the possibility that the Copps' claim fit within one of the exceptions to the mootness doctrine. *Id.*, 2017 WL 1398185, at *4, 2017 Me. Super. LEXIS 75, at *9. She concluded that the issues the Copps were presenting were not matters of great public concern and that they were not likely to be repeated. *Id.*, 2017 WL 1398185, at *4-5, 2017 Me. Super. LEXIS 75, at *10-11.

### 6. Disposition

The Superior Court concluded that the Copps had not named the proper party to their Rule 80B appeal and "the court can no longer provide plaintiffs with any real or effective relief" because they had "fully complied with the Board's decision and their claim is moot." *Id.*, 2017 WL 1398185, at *5, 2017 Me. Super. LEXIS 75, at *11-12. The Court sustained the position of the Board of Adjustment & Appeals. *Id.*, 2017 WL 1398185, at *5, 2017 Me. Super. LEXIS 75, at *12.

13

### 7. The Maine Supreme Judicial Court

On October 24, 2017, the Maine Supreme Judicial Court in a memorandum of decision issued a brief order, affirming the Superior Court. *Copp v. Town of Cumberland*, No. Cum-17-137, 2017 Me. Unpub. LEXIS 105 (Oct. 24, 2017). It read in part:

> Contrary to the Copps' contention, their claims that the Board erred were rendered moot when they complied with the NOV. Upon the Copps' compliance with the NOV, the CEO lifted the stop work order, and the Copps were free to continue building their home. There remains no practical effect resulting from the resolution of their claims to justify our review.

*Id.* at *1.

### D. The 2018 Complaint

As noted earlier, the Copps' 2018 Complaint contains many of the same allegations that formed the basis for their 2016 Complaint. This time, however, the Copps posit nine counts: (1) Count One—Trespass against Mr. Shane, (2) Count Two—Trespass against Mr. Longley, (3) Count Three—Intentional Infliction of Emotional Distress (IIED) against all Defendants, (4) Count Four—Negligent Infliction of Emotional Distress (NIED) against all Defendants, (5) Count Five—Nuisance against Mr. Shane and Mr. Longley, (6) Count Six—42 U.S.C. § 1983 against Defendants Shane and Longley, (7) Count Seven—42 U.S.C. § 1983 against the town of Cumberland, (8) Count Eight—5 M.R.S. § 4682 against all Defendants, and (9) Count Nine—Violation of Maine's Freedom of Access Act. *2018 Compl.* at 8-17.

## II. LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A 12(b)(1) motion questions whether a court has subject matter jurisdiction over the action before it.  *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (internal citation omitted).  "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  FED. R. CIV. P. 12(h)(3).  The plaintiff has the burden to sufficiently allege facts that illustrate that he or she is proper party to invoke federal subject-matter jurisdiction.  *Dubois v. United States Dep't of Agric.,* 102 F.3d 1273, 1281 (1st Cir. 1996).  When ruling on a Rule 12(b)(1) motion, the Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff*." Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996).  "[T]he court may [also] consider whatever evidence has been submitted."  *Id.*

### B.    Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  That is, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 550, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

(citing *Twombly*, 550 U.S. at 556). "Plausible . . . means something more than merely possible and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on' [the judge's] 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (citing *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013)). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (citation omitted). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citation omitted).

## III.   POSITION OF THE PARTIES

### A.   The Defendants' Motion

Defendants contend that the Copps' tort claims of trespass, nuisance, NIED, and IIED, are all subject to the MTCA and are time-barred by its two-year statute of limitations. *Defs.' Mot.* at 6-7. They say since the Copps filed their Complaint on March 27, 2018, "any tort claims that accrued before March 27, 2016 are time-barred . . . . [and] Plaintiffs do not allege any facts to suggest that any of their tort claims accrued after March 27, 2016." *Id.* at 7. Defendants aver that:

> The only events that the Plaintiffs allege occurred after that date are:
> [1] service by the Plaintiffs of a notice of claim (on March 29, 2016); [2]

a request by Mr. Longley to inspect the Property (February of 2017); [3] requests by the Plaintiffs to the Town for documents under the Maine Freedom of Access Act, 1 M.R.S. §§ 400 to 414 ("FOAA") (February 27, 2017 and March 30, 2017); [4] an acknowledgement of the Plaintiffs' FOAA request by the Town's attorney (March 2, 2017); and [5] the Town's denial of the Plaintiffs['] FOAA requests (date not specified).

*Id.* The Defendants argue that these events do not relate to their tort claims. *Id.* at 7-8.[14] Alternatively, the Defendants argue that Mr. Longley and Mr. Shane are not liable under the MTCA because the Defendants assert that discretionary function immunity shields them because they were engaged in functions as government employees previously recognized as protected under discretionary function immunity. *Id.* at 8-10 (citing various Maine state law precedent).

The Defendants assert the majority of Copps' civil rights claims are barred by Maine Rule of Civil Procedure 80B's exclusivity. *Id.* at 11. The Defendants claim that direct review "pursuant to Maine Rule of Civil Procedure 80B is exclusive unless inadequate." *Id.* (citing *Colby v. York Cty. Comm'rs*, 442 A.2d 544, 547 (Me. 1982)). In their eyes, to the degree the Copps' claims stem from "irregularities of the process" at the town board hearing, they are barred by claim preclusion since the Copps have largely asserted the same claims here as they did in their Rule 80B appeal. *Id.* at 12.

In response to the Copps' procedural due process claim, the Defendants argue that the First Circuit views "procedural due process challenges to local land-use and zoning decisions with considerable skepticism," and that Rule 80B provides a means

---

[14]     Defendants also contend that because the Complaint does not allege that Randall Copp "is either the owner or occupant of the relevant parcel" and "there does not appear to be any other basis for him to claim 'entitlement' to use the property," his trespass or nuisance claims should be dismissed as insufficient to state a cognizable claim. *Def.'s Mot.* at 10.

to complain of alleged procedural violations, as the Plaintiffs have. *Id.* at 15 (citing *Brockton Power LLC* v. *City of Brockton*, 948 F. Supp. 2d 48, 67 (D. Mass. 2013) (quoting *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 832 n.9 (1st Cir. 1982)). Thus, the Defendants argue, the Copps cannot make out a procedural due process claim. *Id.*

Turning to the substantive due process claim, the Defendants contend that "a plaintiff 'must plausibly allege that the actions taken against him were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property.'" *Id.* at 16 (quoting *Gianfrancesco v. Town of Wrenthem*, 712 F.3d 634, 639 (1st Cir. 2013)). They assert that because "the Plaintiffs do not allege anything more than procedural irregularities and arbitrary inspections, their Complaint fails to allege egregious actions by the Town." *Id.* (internal quotation marks omitted).

As for the Copps' equal protection violation claim, the Defendants contend that since "the Plaintiffs have not alleged that the Town treated them differently from others similarly situated, they fail to allege plausible equal protection claims." *Id.* at 15 (citing *Gianfrancesco*, 712 F.3d at 639-40 ("a class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action")).

The Defendants argue that the Copps' claims premised on alleged Fourth Amendment violations are insufficient pursuant to the open fields doctrine. *Id.* at 13 (citing *Oliver v. United States*, 466 U.S. 170, 177 (1984) (citing *Hester v. United States*,

265 U.S. 57 (1924))). They aver that the Copps "do not actually allege that Mr. Longley or Mr. Shane inspected the building under construction on the property – all they allege is two (possibly three) instances in which these two men were on or near the property." *Id.* at 13. Even if the individual Defendants did inspect the construction of the property, Defendants maintain that the Copps failed to allege an intrusion on an interest protected by the Fourth Amendment. *Id.* at 13-14 (citing *Frey v. Panza*, 621 F.2d 596, 598 (3d Cir. 1980); *Shapiro v. City of Glen Cove*, No. CV 03-0280 (WDW), 2005 U.S. Dist. LEXIS 43276, *35 (E.D.N.Y. May 5, 2005)). They further assert "even if Mr. Longley and Mr. Shane had entered the Plaintiffs' property in spite of prohibitions and 'no trespass' signs, these facts would not alter the constitutional analysis" because "[t]o implicate the Fourth Amendment, a search or seizure of property must amount to more than a mere common-law trespass — the property must be effectively converted to the dominion and control of the State." *Id.* at 14 (quoting *Sanchez v. City of Boston*, No. 10-11075, 2011 U.S. Dist. LEXIS 130137, *5-6 (D. Mass. Nov. 10, 2011) (citing *United States v. Va Lerie*, 424 F.3d 694, 702, 708-09 (8th Cir. 2005) (en banc))). Defendants also assert they are entitled to qualified immunity as to the civil rights claims. *Id.* at 17-18.

Lastly, the Defendants argue that "[t]he Complaint's allegations fail to establish that the Plaintiffs took a timely appeal of the alleged FOAA violation", which in turn "implicates the court's subject matter jurisdiction." *Id.* at 19-20 (citing *Davric Me. Corp. v. Bangor Historic Track, Inc.*, 2000 ME 102, ¶ 11, 751 A.2d 1024). By challenging subject matter jurisdiction, they assert, the burden to show

jurisdiction shifts to the Copps, who have failed to carry that burden. *Id.* at 20 (citing *Hodgdon v. United States*, 919 F. Supp. 37, 38 (D. Me. 1996)).

### B. Plaintiffs' Position

The Copps counter the Court has subject matter jurisdiction because their § 1983 claims are intertwined with the question of jurisdiction, and courts are hesitant to rely on Rule 12(b)(1) when it necessarily implicates the merits of the underlying cause of action. *Pls.' Opp'n* at 2-3 (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)). They say claim preclusion is inapplicable because their prior appeal was not decided on the merits but was deemed moot "due to Plaintiffs' compliance with the NOV [Notice of Violation]." *Id.* at 4. They analogize this situation to a "dismissal on jurisdictional grounds [which] does not constitute a valid final judgment." *Id.* (citation omitted).

The Copps assert that their civil rights claims were not part of their Rule 80B appeal and cannot be barred. *Id.* at 5. Even if res judicata were applicable, the Copps say this case presents an exception because the Defendants implicitly assented to splitting their claims, and thus, "a judgment in an earlier action which normally would bar the subsequent action will not." *Id.* (quoting Restatement (Second) of Judgments § 26(1)(a) (Amer. Law Inst.)) (Restatement Judgments). The Copps claim that Defendants acquiesce when they do not timely object and waive the benefits of res judicata. *Id.*

In terms of their Fourth Amendment claims, the Copps assert they have a legitimate expectation of privacy in their home and its surrounding curtilage. *Id.* at

7 (citing *Oliver*, 466 U.S. at 180). They contend that the "road inspection" by the individual Defendants "was an instance of unreasonable search of their home and its curtilage, and not an entering of an open field." *Id.* at 8 (internal quotations omitted).

As for procedural due process, the Copps assert "the procedures used by the Town were not in compliance with the statutory procedures available to the parties." *Id.* at 9. They contend they have sufficiently alleged that the Defendants denied them due process and equal protection because the "procedural irregularities" are "clear violations of the statutory scheme in place to protect citizens from the very arbitrary, capricious, and unreasonable actions of Town officials." *Id.* at 9-10. The Copps admit that these actions by the Defendants may not "shock the conscience" individually but are, in all totality, still "outrageous, uncivilized, and intolerable." *Id.* at 10. Since the individual defendants were "policymaking officials" for the town of Cumberland, they argue the town is liable for the alleged transgressions. *Id.* Nor are the individuals Defendants entitled to qualified immunity, according to the Copps, because their allegations show that a reasonable official, in position of the Defendants, would have known their actions were unlawful. *Id.* at 11.

### C. Defendants' Reply

The Defendants argue that the Copps "failed to acknowledge or address several of" their arguments, specifically their arguments that the tort claims are barred under the MTCA statute of limitations, that the Defendants are immune under the MTCA, Randall Copp's inability to maintain a trespass or nuisance claim, and merely made "general conclusory statements" that did not adequately address whether the

Court has subject matter jurisdiction over the FOAA claim. *Defs.' Reply* at 1. As a result, the Defendants claim that the "Plaintiffs have waived their right to object to Defendants' contentions and Counts I through V and IX should be dismissed." *Id.* (citation omitted).

Regarding the exclusivity of Rule 80B, the Defendants counter that it is irrelevant whether the Rule 80B appeal was decided on the merits, because "Rule 80B exclusivity is premised on principles of *res judicata*; therefore, if the courts do not upset the local board action, the local board's decision on the merits is considered final." *Id.* at 2 (emphasis in original). The Defendants maintain that in the Rule 80B appeal, "the Plaintiffs put forth arguments pertaining to process errors of the Town in administering the hearing – arguments which mirror the allegations contained in the . . . Complaint [and the] relief the Plaintiffs currently seek regarding alleged procedural irregularities was fully available to them in the prior appeal . . . ." *Id.* They argue none of the exceptions to Rule 80B's exclusivity is applicable. *Id.* at 2-3. They contend that the waiver argument is "an obvious red herring." *Id.* at 3. They say while there are different Defendants in the two cases, and while they did not object to the dismissal of claims originally, "the town board did not relinquish any arguments as to Rule 80B exclusivity . . . ." *Id.* (citing *Mar. Energy, Inc. v. Cont'l Ins. Co.*, No. 04-271-P-S, 2005 U.S. Dist. LEXIS 21484, at *17 (D. Me. Sept. 26, 2005)).

The Defendants maintain that the Copps have not supported their contention that "an incomplete and unoccupied structure" is protected under the Fourth Amendment. *Id.* They claim "the Complaint alleges only that the Defendants entered

the "Property," defined in the Complaint as "property located off Pointer Way, as show[n] on Town of Cumberland Tax Map, R-07, Lot 57C," without their permission or authorization to conduct a "road inspection." *Id.* at 4 (quoting *2018 Compl.* ¶¶ 7, 16, 18, 21). The Defendants say these allegations do not indicate that they entered the residence or its surrounding curtilage. *Id.* Alternatively, the Defendants argue "entry of the structure or curtilage under these circumstances would not give rise to a Fourth Amendment violation" since there is no reasonable expectation of privacy in an unoccupied, partially-built house. *Id.*

Defendants reiterate that the equal protection claim fails since the "Complaint fails to allege that Plaintiffs were treated differently than those similarly situated or that they were treated differently based on an impermissible consideration." *Id.* at 5 (citing *Gianfrancesco*, 712 F.3d at 639-40).

Defendants assert that the Copps' allegations are insufficient to sustain a substantive due process claim because the "shocks the conscience" standard requires "stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme." *Id.* at 5 (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010) (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005))). In any event, they claim they are entitled to qualified immunity because while the First Circuit has not directly spoken on this issue in this context, "the legal contours of the alleged constitutional right are not sufficiently clear such that the law can be considered clearly established." *Id.* at 6-7 (citation omitted).

## IV.   DISCUSSION

### A.   Tort Claims

#### 1.   Randall Copp

The Defendants allege that the Complaint does not state a property interest for Randall Copp, as opposed to Elvin Copp, to provide a basis for maintaining trespass and nuisance claims in his name.  *Defs.' Mot.* at 10.  The Court disagrees.[15]

The Complaint alleges that Elvin Copp "owns a parcel of property located off Pointer Way . . .."  *2018 Compl.* ¶ 7.  As regards Randall Copp, however, the Complaint alleges:

> The Plaintiff, Randall Copp, at all times relevant, has supervised the construction of his single-family residence.

*Id.* ¶ 8.  Assuming that a mere constructor of a residence does not have a sufficient possessory interest to establish standing, but emphasizing the possessive "his", the Court reads the Copps' allegations as claiming that Elvin Copp allowed Randall Copp to build a residence on Elvin Copp's property, and Randall Copp is and will continue to be the owner of the residence.  Randall Copp's property interest in the residence gives him a sufficient interest to avoid dismissal in the events subject to this lawsuit.

---

[15]   The Defendants urge the Court to grant their motion to dismiss on this issue because the Copps did not respond to this issue in their response.  The Court agrees that the Copps did not respond and that it would have been helpful if they had.  The allegation that "Randall Copp . . . has supervised the construction of his single-family residence" does not define "his" and it could easily be read to say that Randall Copp has supervised the building of his father's residence and as easily to say that Randall Copp has supervised the building of his own residence on his father's land.  Simply by responding to the Defendants' argument on this point, the Copps could have clarified this ambiguity.  But they failed to do so.  The Court has made an inference in Randall Copp's favor, because it is reluctant to default Randall Copp for failing to respond and because it is required to draw all reasonable inferences in favor of the Copps.  Nevertheless, it would have saved the Court and the Defendants time and trouble if the Copps had simply responded and clarified their allegations.

*See e.g., Morang v. Mayo*, No. CIV.A. CV 03-414, 2003 WL 23185877, at *2, 2013 Me. Super. LEXIS 263, at *4 (Me. Super. Dec. 17, 2003) ("[F]or a claim of trespass possession rather than ownership is the key requirement") (citation omitted).

## 2.    Analysis of the Statute of Limitations Issue

The Copps allege four tort claims against the Defendants: trespass, nuisance, NIED, and IIED. *2018 Compl.* Counts I-V. The Defendants argue that the MTCA is applicable to these claims because they are alleged against a governmental entity and government employees. *Defs.' Mot.* at 6. They assert the MTCA's two-year statute of limitation applies, and "any tort claims that accrued before March 27, 2016, are time-barred" given that the Copps filed the Complaint on March 27, 2018. *Id.* at 7.

The MTCA is implicated because the Copps assert tort claims against the town of Cumberland, a municipality, and Mr. Shane and Mr. Longley, municipal employees. 14 M.R.S. § 8103(1) ("Except as otherwise provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by this chapter, any claim for damages shall be brought in accordance with the terms of this chapter"); § 8111 (Addressing personal immunity under the MTCA for employees of governmental entities); *Richards v. Town of Eliot*, 2001 ME 132, ¶ 42, 780 A.2d 281 ("Pursuant to the Maine Tort Claims Act, towns are immune from suit on tort claims unless the Act expressly removes immunity"). Under the MTCA, to proceed with a tort claim against a Maine municipality or municipal employee, a plaintiff must bring the claim "in accordance with the terms of this chapter." § 8103(1).

25

Section 8110 of the MTCA provides that "[e]very claim against a governmental entity or its employees . . . is forever barred . . . unless an action therein is begun within 2 years after the cause of action accrues." A tort action accrues "when the plaintiff sustains harm to a protected interest . . . ." *Chiapetta v. Clark Assocs.*, 521 A.2d 697, 699 (Me. 1987) (citation omitted). "In other words, it accrues at the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek judicial vindication." *McLaughlin v. Superintending Sch. Comm. of Lincolnville*, 2003 ME 114, ¶ 22, 832 A.2d 782 (internal quotation marks omitted) (citing *Williams v. Ford Motor Co.*, 342 A.2d 712, 714 (Me. 1975)).

The Copps' tortious allegations stem from events from early August 2014 to mid-February 2016. *See 2018 Compl.* ¶¶ 16, 23. The Copps filed their Complaint on March 27, 2018. *State Ct. Record* Attach. 1, *State of Me. Docket Record* at 1. The Copps do not allege or argue that any tolling provision extends the statute of limitations period.

As noted, on March 25, 2016, the Copps filed a complaint in Cumberland County Superior Court against the Town of Cumberland Board of Adjustment & Appeals. *See Copp v. Town of Cumberland Board of Adjustment & Appeals*, No. 2:16-cv-213-JDL, *Notice of Removal* Attach. 1, *80B Appeal*, Attach. 2, *2016 Compl.* (ECF No. 1). On April 22, 2016, the town board removed that case to this Court. *Id.*, *Notice of Removal*. On June 29, 2016, the Copps filed an unopposed motion to remand the case to state court, and on June 30, 2016, the district court granted the unopposed motion. *Id.*, *Pls.' Mot. for Remand* (ECF No. 14); *Order Granting Without Obj. Mot.*

*to Remand to State Court* (ECF No. 15).  The Copps asserted no tort claims in their 2016 Complaint.[16]  *Id.*, *2016 Compl.* ¶¶ 1-139.

The Court concludes that any alleged torts the town or its employees committed against the Copps that accrued before March 27, 2016 are time-barred by the two-year statute of limitations.  In their Complaint, the Copps allege that only the following actions took place after March 27, 2016: (1) on March 29, 2016, the Copps served a notice of claim for the purposes of the MTCA; (2) "[i]n or around February 2017," Mr. Longley contacted Randall Copp to "request a site inspection;" (3) on February 27, 2017, the Copps made a FOAA request that the town of Cumberland acknowledged it received on March 2, 2017; and (4) on March 30, 2017, the Copps made another FOAA request and at some point, the town denied this request.  *2018 Compl.* ¶¶ 54-58.

None of these alleged within-statute events extends the two-year statute of limitations.  The two-year statute of limitations by its express terms runs not from the date of the notice of claim, but from the date "the cause of action accrues." § 8110.  Timely notice of claim under section 8107 does not absolve a claimant from complying with the statute of limitations for the MTCA.  *See Springer v. Seaman*, 662 F. Supp. 229, 230 (D. Me. 1987); *Langevin v. City of Biddeford*, 481 A.2d 495, 497 (Me. 1984).  Nor did the Copps' FOAA requests toll or restart the two-year statute of limitations

---

[16]    "A court may . . . consider certain materials outside the pleadings when ruling on a . . . Rule 12(b)(6) [motion] without converting the motion to one for summary judgment, including documents of undisputed authenticity, official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint."    *Papi v. Town of Gorham*, No. 2:16-CV-00560-JDL, 2017 WL 1411479, at *2 (D. Me. Apr. 20, 2017) (citing *Town of Rome*, 810 F.3d at 89).

under the MTCA.

The only possible factual allegation within the two-year window that could conceivably relate to the alleged torts is that Mr. Longley contacted Randall Copp in February 2017 to request a site inspection. *2018 Compl.* ¶ 55. Assuming that Randall Copp has a sufficient interest in the property to bring this claim, *see 2018 Compl.* ¶¶ 7-8, for a town official merely to contact a person who is building a residence on another's land to request a site inspection could not constitute a trespass (Counts I, II) or a nuisance (Count V) (a nuisance count) since the town official has not impinged upon an interest in the property by merely making a verbal request to inspect the property.

Counts III and IV, the NIED and IIED counts, are also based on an asserted property interest. Counts III states that the Defendants caused emotional distress by "intrud[ing] upon the privacy and quiet enjoyment of Plaintiffs' Property," that the Defendants "wrongfully entered upon the Plaintiffs['] property to illegally search the Property for alleged code violations," and that the Defendants "intentionally, improperly and wrongfully issue[d] a[n] improper Notice of Violation." *Id.* ¶¶ 82-84. Count IV contains similar allegations. *Id.* ¶¶ 94-95. The only allegation that the Copps have made against the Defendants which even plausibly falls within the two-year statute of limitations is a conversation that Mr. Longley had with Randall Copp. Again, for a town official simply to request an inspection could not constitute the NIED or the IIED. The Court concludes that such a conversation would not extend the statute of limitations.

Accepting the allegation in paragraph 55 as true, it is difficult to stretch this event—a mere telephone request for an inspection—as continuing any of the alleged torts. Count I, makes allegations against Mr. Shane, not Mr. Longley. *Id.* ¶¶ 59-67. Count II, the trespass count against Mr. Longley, alleges that Mr. Longley entered onto the Copp property, not that he asked permission to do so. *Id.* ¶¶ 68-78. Count III, the IIED count, and Count IV, the NIED count, against all the Defendants, alleges that the Defendants entered onto their property and thereby inflicted emotional distress. *Id.* ¶¶ 79-102. Count V, the nuisance count against Mr. Shane and Mr. Longley, alleges that they intruded upon their property and interfered with their solitude, privacy and enjoyment of their home. *Id.* ¶¶ 103-08. None of these claims is supported by a telephone conversation between Mr. Longley and Randall Copp, requesting permission to enter his father's property.

Finally, the allegation that Mr. Longley contacted Randall Copp in February 2017 to ask his permission to inspect the property is consistent not with Mr. Longley committing a tort, but with Mr. Longley doing what the Copps claim he should have done: contact them in advance to arrange for an inspection in their presence.

Viewed another way, the Complaint does not state a claim for a nuisance or trespass based on any post-March actions of the Defendants against either Elvin Copp as the owner or Randall Copp as the owner's son because the Complaint does not allege interference with the Copps' use or enjoyment of the property or any sort of entry onto the property. *See Darney v. Dragon Prods. Co.*, 771 F. Supp. 2d 91, 105, 108 (D. Me. 2011) (citations omitted). Similarly, the post-March actions of the

Defendants do not support the IIED and NIED claims given that the heart for these claims are the Defendants alleged "illegal search[es]", wrongfully issuing the Notice, "intru[sions] upon the privacy and quiet enjoyment of Plaintiff's property." *2018 Compl.* ¶¶ 82-84, 94-95, 99.

Taking all the Copps' well-pleaded allegations as true and applying all reasonable inferences in favor of the Copps, the two-year statute of limitations of the MTCA bars their tort claims against the municipality and its employees, and the Court grants the Defendants' motion to dismiss for failure to state a claim as to Counts I-V of the Complaint.

## B. Civil Rights Claims

### 1. Claim Preclusion

The Defendants argue that the Copps' civil rights claims based on alleged procedural irregularities are barred by the doctrine of res judicata, specifically claim preclusion. *Defs.' Mot.* at 11.[17] The Copps respond that "[t]he prior 80B appeal . . . was not decided on the merits, but was deemed moot due to the Plaintiffs' compliance with the NOV." *Pls.' Opp'n* at 4. The Copps further argue that the Defendants acquiesced to the splitting of their claims by failing to timely object, and that under First Circuit precedent, claim splitting operates as an exception to res judicata. *Id.* at 5 (citing *Calderon Rosado v. Gen. Elec. Circuit Breakers, Inc.*, 805 F.2d 1085, 1087 (1st Cir. 1986)). Defendants reply that "whether their prior Rule 80B appeal was

---

[17]      In their reply, the Defendants contend that "issue preclusion" bars the most of the Copps' civil rights claims. *Defs.' Reply* at 2. However, since the Defendants originally asserted claim preclusion, and because it was the claim preclusion argument the Copps responded to, the Court evaluates the Defendants' argument under claim preclusion.

decided on the merits is not relevant to Rule 80B exclusivity" given that local board's decision on the merits is considered final if the courts do not upset that decision. *Defs.' Reply* at 2. They contend that no exceptions to Rule 80B's exclusivity are applicable, and that they did not waive any objection with the dismissal of the prior action in light of Maine law. *Id.* at 2-3 (citation omitted).

"[W]here a motion to dismiss is based on the defense of res judicata, a 'court may take into account the record in the original action.'" *Bastille v. Me. Pub. Emp. Ret. Sys.*, No. 1:16-CV-31-NT, 2016 WL 4250256, at *2 (D. Me. Aug. 10, 2016) (quoting *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008)). In counts VI – VIII, the Copps complain that the Defendants committed federal and Maine constitutional violations and seek relief pursuant to 42 U.S.C. § 1983 and the Maine Civil Rights Act (5 M.R.S. § 4682 *et seq*). The Court evaluates the federal and state claims under the same legal standard. *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008) ("[B]ecause the protections provided by the Maine Civil Rights Act, including immunities, are coextensive with those afforded by 42 U.S.C. § 1983, the dismissal of the Estate's 1983 claims mandates that this claim receive similar treatment"); *Cookson v. City of Lewiston*, No. 2:11–cv–460–DBH, 2013 WL 945502, at *4 (D. Me. Feb. 7, 2013).

"[A] state court judgment is entitled to the same preclusive effect in federal court as it would be given in the state in which it is rendered." *Monagas v. Garcia-Ramirez de Arellano*, 674 F.3d 45, 50 (1st Cir. 2012). To determine the implications of state court judgments, a court looks to state law, *id.*, applying "the law of preclusion

of the state in which the judgment was entered." *Nickerson-Malpher v. Worley,* 560 F. Supp. 2d 75, 80 (D. Me. 2008). Under Maine law, a state court judgment should be given preclusive effect if: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; [and] (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997).

In determining whether a claim might have been litigated in the first action, a court must examine "whether the 'same cause of action' was before the court in the prior case." *Johnson v. Samson Constr. Corp.,* 704 A.2d 866, 868 (Me. 1997). Two claims will be considered to involve the "same cause of action" if they were "founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same wrong." *Brown v. Osier,* 628 A.2d 125, 127 (Me. 1993) (citing *Kale v. Combined Ins. Co.*, 924 F.2d 1161 (1st Cir. 1991)). Claim preclusion requires "a plaintiff to pursue all rights that he may have against a given defendant arising out of the 'transaction or series of transactions' from which his suit arises." *Beegan v. Schmidt*, 451 A.2d 642, 644 (Me. 1982). The Copps do not dispute that allegations in the previous Rule 80B appeal are the same as in their Complaint before this Court, and a review of the previous Rule 80B appeal shows that the claims fall under the same nucleus of operative facts and seek to redress essentially the same alleged wrongs.[18]

Although the town of Cumberland Board of Adjustment and Appeals was the

---

[18]    *Compare 2016 Compl.* ¶¶ 6-7, 12, 14, 16, 18-20, 22, 28-33, 36, 39-42, 50-51, 53-60, 62, 72-73, 78-80, 82, 89-90, *with 2018 Compl.* ¶¶ 11-15, 17-21, 23-28, 30-53.

Defendant in the previous action, the Defendants currently before the Court are sufficiently related to the town of Cumberland Board of Adjustment and Appeals to invoke privity. *Flaherty v. Muther*, 2011 ME 32, ¶ 33, 17 A.3d 640 (quoting *Human Servs. v. Comeau*, 663 A.2d 46, 48 (Me. 1995) ("[i]n order for the doctrine of privity to be invoked, the first litigation must provide substantial protection of the rights and interests of the party sought to be bound by the second")). In fact, in the 80B appeal decision, the Cumberland County Superior Court noted that the proper parties for that action would be "[t]he municipal officers or the [Code Enforcement Officer.]" *Copp*, 2017 WL 1398185, at *2, 2017 Me. Super. LEXIS 75, at *5. Finally, although the Copps list the three elements for claim preclusion and argue that there was no final judgment on the merits in the prior action, they do not argue against the identity of parties or their privies in the two lawsuits. *Pls.' Opp'n* at 3-5.

The Copps' main disagreement is with the Defendants' contention that their previous Rule 80B appeal resulted in a final judgment on the merits. The Defendants argue that because the Cumberland County Superior Court sustained the town board's decision, under Maine law, the board's decision is a final judgment on the merits. In their view, "if the courts do not upset the local board action, the local board's decision on the merits is considered final." *Defs.' Reply* at 2.[19]

Given the facts as the Court must accept them, the Court disagrees with the

---

[19] The Defendants note in their motion to dismiss that the Law Court clarified in its affirmance of the Cumberland County Superior Court's dismissal of the Copps' Rule 80B appeal that "[a]lthough the Superior Court characterized its action as having 'sustained' the decision of the Town's Board of Adjustment and Appeals, the context of its decision makes clear that the court dismissed the Rule 80B appeal as moot." *Defs.' Mot.* at 4 (citing *Copp*, 2017 Me. Unpub. LEXIS 105, at *1 n.1).

Defendants. In *Town of North Berwick v. Jones*, 534 A.2d 667 (Me. 1987), the Law Court concluded, depending on the facts of a given case, "a final adjudication in an administrative proceeding before a quasi-judicial municipal body has the same preclusive effect as a final adjudication in a former court proceeding." *Id.* at 669-70, *see also Bastille*, 2016 WL 4250256, at *4 n.3 (quoting *Town of Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me. 1992) ("Res judicata principles apply equally to administrative proceedings, so long as they 'entail the 'essential elements of adjudication'")). The February 11, 2016 hearing was an administrative proceeding in which a quasi-judicial municipal body -- the town of Cumberland Board of Adjustments and Appeals -- considered the Copps' appeal of the Corrected Notice. Typically, under Maine law, the decision of a municipal zoning board of appeals will constitute a "valid, final judgment . . . in a subsequent legal proceeding between the same parties." *Town of Mt. Vernon v. Landherr*, 2018 ME 105, ¶ 15, 190 A.3d 249.

However, under Maine law, for res judicata to apply to prior administrative proceedings, the "essential elements of adjudication" must be present at that proceeding. *Town of Ogunquit v. Cliff House & Motels, Inc.*, 2000 ME 169, ¶ 11, 759 A.2d 731. The "essential elements of adjudication" encompass:

> 1) adequate notice; 2) the right to present evidence and legal argument and to rebut opposing evidence and argument; 3) a formulation of issues of law and fact to apply rules to specified parties concerning a specified transaction; 4) the rendition of a final decision; and 5) any "other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question."

*Id.* (quoting *Jones*, 534 A.2d at 670 (citing Restatement Judgments § 83(2)). Accepting the Copps' factual allegations, the February 11 hearing did not contain all

"the essential elements of adjudication," as the available records before the Court show that they were prevented from cross-examining witnesses.[20]  The Copps' allegation, which the Court must accept for purposes of the motion to dismiss, is sufficient to raise a question as to whether the town board complied with its obligation to allow the Copps "to rebut opposing evidence and arguments."[21]  *Id.*

As the Court must draw all reasonable inferences in the non-movant's favor, the Court concludes that the Copps were not afforded all "essential elements of adjudication," and therefore, the Court declines to bar the Copps' civil rights claims in Counts VI-VIII because the town board's decision is not a final judgment on the merits as required to apply res judicata or claim preclusion principles.[22]  *See*

---

[20]    The Copps make other allegations that could provide a basis for concluding that the February 11 town board hearing did not contain all the elements for an adjudicatory process that the Maine Supreme Judicial Court requires, including whether the town gave them prior notice of the alleged violations, *2018 Compl.* ¶ 126, and whether the town board provided them with timely findings of fact and conclusions of law sufficient to constitute a final decision. *Id.* ¶¶ 127-29.

[21]    The extent to which the Copps would be entitled as a matter of law to cross-examination is not clear. The Copps assert that the town board violated 30-A M.R.S. § 2691(3)(D). But section 2691(3)(D) states that "[e]very party has the right to present the party's case or defense by oral or documentary evidence, to submit rebuttal evidence and to conduct any cross-examination that is required for a full and true disclosure of the facts." The Copps' Complaint does not reveal whether the town board determined that cross-examination was not required for a full and true disclosure of the facts.

If not required under the Maine statute, whether cross-examination is constitutionally required is also complicated. Due process is "not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation." *Gomes v. Univ. of Me. Sys.*, 365 F. Supp. 2d 6, 15 (D. Me. 2005) (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988)). For example, the First Circuit upheld restrictions on cross-examination in public university disciplinary hearings. *Cloud v. Trs. of Boston Univ.*, 720 F.2d 721, 724-25 (1st Cir. 1983).

Other than the Copps' general allegation, the Court does not have sufficient information on this record as to whether the town board entirely denied the request for cross-examination, and if so, whether the town board offered a justification for doing so, and if not, whether the town board's restrictions on cross-examination were reasonable in light of the circumstances. The Court is not, however, required to reach these issues to rule on the pending motion to dismiss.

[22]    The Court does not reach the Defendants' argument that a dismissal on mootness grounds is a final judgment because this argument rests on the premise that the underlying town decision was a final judgment for res judicata purposes, which the Court has determined it was not. For the same reason, the Court has also not reached the Copps' argument that the Defendants acquiesced in claim splitting.

Restatement Judgments § 83, cmt. 2.

## 2.   42 U.S.C. § 1983 and Maine Civil Rights Act

"To sustain an action under 42 U.S.C. § 1983, [the Copps] must show both (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Smith v. City of Boston*, No. Civ. A. 03-10062-DPW, 2004 WL 1572626, at *3 (D. Mass. July 13, 2004) (internal quotation marks omitted) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 40 (1st Cir. 1987)).[23]

### a.   Individual Defendants

### i.   Fourth Amendment Claim

The Copps claim that Mr. Shane and Mr. Longley violated their Fourth Amendment civil rights by unlawfully entering their property, but the Defendants assert that the Fourth Amendment does not preclude government employees from examining "open fields". *Defs.' Mot.* at 13. The Defendants further argue that a house under construction does not implicate the same level of constitutional protections as a house used as a residence, and that allegations of common-law trespass are insufficient to maintain an actionable Fourth Amendment claim. *Id.* at 13-14. The Copps dispute the categorization that the inspection was of an "open field" and instead allege that it was an "'unreasonable search' of the home and curtilage of the Plaintiffs . . . ." *Pls.' Opp'n* at 7-8.

---

[23] The parties do not dispute that § 1983 and Maine Civil Right Act claims "are analyzed co-extensively." *Cady v. Walsh*, 753 F.3d 348, 356 n.6 (1st Cir. 2014) (citing *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007)).

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. A search occurs within the meaning of the Fourth Amendment when there is an intrusion on or into a place where one has a "reasonable expectation of privacy." *United States v. Bain*, 874 F.3d 1, 12 (1st Cir. 2017) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan J., concurring)). To determine whether one has a reasonable expectation of privacy, the Court analyzes: (1) whether the individual has exhibited an actual expectation of privacy, and (2) whether that expectation is one society is ready to recognize as reasonable. *Id.* (citations omitted). In *Florida v. Jardines*, 569 U.S. 1, 133 (2013), the Supreme Court also used common-law trespass principals to supplement the Fourth Amendment search test under *Katz*. *Id.* at 1414 (citation and internal quotation marks omitted) ("[w]hen the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred"). Warrantless searches of one's home by government agents are presumptively unreasonable. *Bilida v. McCleod*, 211 F.3d 166, 171 (1st Cir. 2000). The "curtilage" of one's home, meaning the area adjacent to the home, is also subject to the warrant requirement. *Id.* The warrant requirement is applicable in both criminal and civil searches. *Id.* (citing *Soldal v. Cook County*, 506 U.S. 56, 66-67 & n.1 (1992)).

The Defendants argue that the Copps do not actually allege that Mr. Longley or Mr. Shane inspected the building under construction on the Copp property but only

that they were on or near the property two or three times; as a result, the Defendants contend that the Copps state no claim under the open fields doctrine. *Defs.' Mot.* at 13. A review of the Plaintiffs' Complaint confirms that the Copps do not allege that Mr. Shane and Mr. Longley entered the Copp residence. The Complaint defines "Property" as "a parcel of property located off Pointer Way . . .," *2018 Compl.* ¶ 7, and distinguishes "Property" from residence: "The Plaintiff, Randall Copp, at all times relevant, has supervised the construction of his single-family residence at the Property." *Id.* ¶ 8. In the allegations of the Complaint, the Plaintiffs maintain that Mr. Shane and Mr. Longley entered onto their property, not into the residence. *Id.*

Nevertheless, the Court disagrees with the Defendants' contention that the Copps have no actionable Fourth Amendment claim because Mr. Shane and Mr. Longley did not inspect the building itself. *See Jardines*, 569 U.S. at 6 ("[T]he curtilage of the house . . . enjoys protection as part of the home itself"). The United States Supreme Court has long recognized a distinction between open fields, which are not subject to Fourth Amendment protection, and the curtilage surrounding a home, which is. *Compare Hester*, 265 U.S. at 59 ("The distinction between [open fields] and the house is as old as the common law"), *with Jardines*, 569 U.S. at 7 ("We therefore regard the area immediately surrounding and associated with the home . . . as party of the home itself for Fourth Amendment purposes") (internal punctuation and citation omitted).

Although the Copps argue that they alleged that Mr. Shane and Mr. Longley entered their curtilage and inspected their home, the Complaint does not come out

and say what the Copps are now arguing.  The Complaint only alleges that Mr. Shane and Mr. Longley entered their "property."  *2018 Compl.* ¶ 16 ("Defendant Longley was found by Plaintiff Randall Copp on the Property"); *Id.* ¶ 18 ("The Plaintiffs captured a photograph of the Town Manager, William Shane, entering and exiting the Property").  Stretching nearly to the breaking point the inferences in favor of the Copps that could be deemed reasonable from the sparse allegations in the Complaint, the Court concludes that by "Property", the Copps intend to refer to their curtilage.[24]

This does not end the matter.  Taking all reasonable inferences in favor of the Copps and drawing on "judicial experience and common sense," the Court must still evaluate whether the factual allegations in the Complaint, *2018 Compl.* ¶¶ 15-19, 21, are sufficient to state a plausible Fourth Amendment violation.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Defendants argue that the Copps allege only a common-law trespass insufficient to state a claim under the Fourth Amendment.  *Defs.' Mot.* at 14 (citing *Sanchez*, 2011 U.S. Dist. LEXIS 130137, *5-6 (citing *Va Lerie*, 424 F.3d at 702, 708-709 (en banc)).  The Copps counter that the "road inspection" conducted by Mr. Longley necessarily means that he inspected the home given the language of the Corrected Notice, and they argue the record shows that "the home's exterior was complete and enclosed so that the Plaintiffs had an expectation of privacy."  *Pls.'*

---

[24]    In *United States v. Dunn*, 480 U.S. 294 (1987), the United States Supreme Court set forth four factors to determine whether the curtilage or open fields are involved.  *Id.* at 301.  By assuming that Mr. Shane and Mr. Longley entered the Copps' curtilage, the Court has not applied these four factors to the allegations in the Complaint.  But to do so, the Court overlooked the lack of specificity in the allegations of the Complaint on this issue.

*Opp'n* at 7.[25]

This is a close issue. The Copps' allegations fail to allege what Mr. Shane and Mr. Longley did on the property and where on the property they did it, and their Fourth Amendment claim is grounded on trespass. *2018 Compl.* ¶¶ 16-18, 21, 25. However, "[t]respass alone . . . does not violate the Fourth Amendment." *United States v. Apicelli*, No. 14-CR-012-01-JD, 2015 WL 2064290, at *5 (D.N.H. May 4, 2015); *see also United States v. Karo*, 468 U.S. 705, 713 (1984) ("an actual trespass is neither necessary nor *sufficient* to establish a constitutional violation") (emphasis added). To implicate the Fourth Amendment, "a search . . . of property must amount to more than a mere common-law trespass—the property must be effectively converted to the dominion and control of the State." *Sanchez*, 2011 U.S. Dist. LEXIS 130137, at *5-6 (citing *Va Lerie*, 424 F.3d at 702, 708-09).

The Copps' Complaint is synoptic to a fault. Based on its allegations, the Court is not able to apply the four *Dunn* factors. 480 U.S. at 301. For example, there is no allegation about the size of the Copps' parcel, whether the residence is viewable from the road, how close either Mr. Shane or Mr. Longley came to the residence, the state of the residence when Mr. Shane and Mr. Longley entered the property, the nature of their inspection, whether the Copp parcel was enclosed, whether the lawn or habitation area was clearly demarcated, and whether the Copps made any efforts (other than the no trespass signs and communication with the town) to maintain

---

[25]    Contrary to the Copps' assertion, nothing before the Court shows the home's exterior was complete and enclosed when the inspections took place, and if complete and enclosed, the Court would not alter its analysis.

privacy. *Compare United States v. Brown*, 510 F.3d 57, 65-66 (1st Cir. 2007) (concluding that if a driveway is exposed to public view, it does not fall within the curtilage); *United States v. Sayer*, No. 2:11–cr–113–DBH, 2012 WL 2180577, at \*1-2 (D. Me. June 13, 2012) (finding law enforcement did not invade the curtilage of the defendant's residence by using his driveway to turn around and make observations from), *with United States v. Diehl*, 276 F.3d 32, 35, 40-41 (1st Cir. 2002) (defendant's driveway was within curtilage in light that it was 500 feet from a discontinued town road in a secluded rural location, multiple trespass signs were posted, and the driveway was surrounded by woods). The allegation that Randall Copp found Mr. Longley "on the Property" on August 4, 2014 is one thing and could constitute a Fourth Amendment violation. But the allegation that Mr. Longley conducted a "road inspection" on September 24, 2015 does not sound like a Fourth Amendment violation if it is what it sounds like, namely an inspection from a public road. *2018 Compl.* ¶¶ 16, 21.

Reading the allegations in the Complaint very generously in favor of the Copps, the Court reluctantly concludes that these issues would be better resolved in the context of a motion for summary judgment than a motion to dismiss. The Court concludes that the Complaint would survive dismissal on the Fourth Amendment claim but for qualified immunity.

### ii. Equal Protection

The Defendants contend that because "the Plaintiffs have not alleged that the Town has treated them differently from others similarly situated, they fail to allege

41

plausible equal protection claims." *Defs.' Mot.* at 15 (citing *Gianfrancesco*, 712 F.3d at 639-40). The Copps have not posited a specific equal protection legal theory to support their claim, but they have asserted various procedural improprieties they allege the Defendants committed in issuing the Corrected Notice and in the conduct of the subsequent February town board hearing. *Pls.' Opp'n* at 9.

An equal protection claim typically involves an allegation of different treatment of groups of people in regard to their civil rights. *See Bruns v. Mayhew,* 750 F.3d 61, 65 (1st Cir. 2014) ("[I]n order to establish an equal protection violation, a plaintiff must show state-imposed disparate treatment compared with others similarly situated in all relevant respects") (internal quotation marks and citation omitted). However, a plaintiff can assert an equal protection claim as a "class of one" but to do so, must show:

> 1) that [he or she were] intentionally treated differently [;] 2) from others similarly situated [;] 3) without a rational basis for that difference in treatment [;] and 4) that the difference in treatment was due to malicious or bad faith intent on the part of the defendants to injure [him or her]."

*Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 143 (D. Mass. 2006) (citation and emphasis omitted). While the Copps assert factual allegations concerning different instances of impropriety by the Defendants, they do not allege that they were intentionally treated differently than those similarly situated. *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) ("Plaintiffs claiming an equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to

demonstrate that plaintiffs were singled out for unlawful oppression") (alterations in original). The Copps fail to state an equal protection claim.

### iii. Substantive Due Process

"To establish a substantive due process claim, a plaintiff must demonstrate an abuse of government power that shocks the conscience or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001) (citation and internal quotation marks omitted), *see also Amsden v. Moran,* 904 F.2d 748, 754 n.5 (1st Cir. 1990) ("In the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error"). The Copps concede that while the alleged actions in isolation may not "shock the conscience;" they, however, insist that the actions do so in the aggregate. *Pls.' Opp'n* at 10. The Defendants assert that the First Circuit has "frequently affirmed dismissal of complaints alleging substantive due process violations in the context of municipal enforcement actions," and that Court should do the same here because the allegations fail to show the Defendants engaged in "egregious" actions. *Defs.' Mot.* at 16.

The Court agrees with the Defendants. "Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." *DePoutot*, 424 F.3d at 119 (citing *Amsden*, 904 F.2d at 757). The Copps' allegations, taken as true, that the individual Defendants entered their property for the purpose of conducting municipal inspections of their residential building project despite a posted no trespassing sign

and despite being told not to go onto the property without the Copps' consent and that they committed procedural errors at the town board hearing do not "shock the conscience." *Compare Marrero-Rodriguez v. Municipality of San Juan,* 677 F.3d 497, 502-03 (1st Cir. 2012) (finding that a police officer, who during a training exercise, took out a firearm, placed it to the back of an unarmed prone officer, who was face down, motionless, under control, and shot the firearm, resulting in the officer's death had engaged in conduct which "shocked to the conscience").

The Copps fail to state a substantive due process claim.

### iv.    Procedural Due Process

In evaluating whether the Copps state a plausible procedural due process claim, the Court "first asks whether there exists a liberty or property interest which has been interfered with by the State; [and then] examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011) (citation omitted). The Defendants say that the First Circuit evaluates procedural due process claims stemming from local zoning and land-use decisions with skepticism and that the Copps' Rule 80B appeal forecloses the Copps' claim that they were not provided sufficient due process. *Defs.' Mot.* at 15. The Copps counter that they only seek redress for the procedures provided for by law which the town board failed to follow. *Pls.' Opp'n* at 9.

The crux of the Copps' procedural due process allegations revolve around their inability to cross-examine Mr. Longley at the February 11, 2016 hearing, and the town board's failure to state the reasons for its decision to uphold the Corrected

Notice along with other grievances concerning the basis for the Corrected Notice and how the hearing was conducted. *Id.* at 9. The Copps appealed the town board's decision to uphold the Corrected Notice pursuant Maine Rule of Civil Procedure 80B, which was dismissed as moot because the Copps subsequently complied with the town board's decision. *Copp*, 2017 WL 1398185, at *5, 2017 Me. Super LEXIS 75, at *11-12 ("Plaintiffs have fully complied with the Board's decision and their claim [is] moot"); *see also Copp*, 2017 Me. Unpub. LEXIS 105, at *1 n.1 (The Superior Court "dismissed the Rule 80B appeal as moot").

"Even a bad faith refusal to follow state law in local administrative matters does not amount to a deprivation of due process where the state courts are available to correct the error." *Mongeau v. City of Marlborough*, 462 F. Supp. 2d 144, 150 (D. Mass. 2006) (citing *Chiplin Enters., Inc. v. City of Lebanon*, 712 F.2d 1524, 1528 (1st Cir. 1983)). Rule 80B "is a procedural rule that governs the process for judicial review of municipal decisions in the Maine Superior Court." *Portland Cellular P'ship v. Inhabitants of the Town of Cape Elizabeth*, No. 2:14-CV-00274-JDL, 2015 WL 438826, at *2 (D. Me. Feb. 3, 2015) (citing *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 9, 868 A.2d 172 (citing M.R. Civ. P. 80B(b)). "Review pursuant to Rule 80B is inadequate when an alleged deprivation of civil rights occurs before, and not as a part of, the action or inaction for which a plaintiff seeks review." *Cayer v. Town of Madawaska*, 2016 ME 143, ¶ 16, 148 A.3d 707 (citing *Gorham v. Androscoggin Cty.*, 2011 ME 63, ¶ 25, 21 A.3d 115). A federal court does not "sit as a super zoning board or a zoning board of appeals." *Coastal Me. Botanical Gardens v. Town of Boothbay*, No. 2:17-cv-

493-JDL, 2018 U.S. Dist. LEXIS 67607, at *9 (D. Me. Apr. 23, 2018) (quoting *Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir. 1985)). "[W]here, as here, the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983." *Raskiewicz*, 754 F.2d at 44.

As the Copps state, "[they] were not seeking any 'additional' safeguards, but merely asking that the Board . . . apply the proper procedure set forth in the applicable statute." *Pls.' Opp'n* at 9. While there may be a property interest at stake, the claimed deprivation occurred as part of the action, which the Copps sought review of pursuant to Rule 80B. However, the Copps subsequently complied with the Corrected Notice, voluntarily foreclosing their right to contest the alleged procedural flaws through Rule 80B. The Copps do not otherwise allege or argue that their review under Rule 80B was inadequate. As a result, the Court concludes that the Copps were afforded sufficient process and concludes they fail to state a procedural due process claim.

### b. Municipality Liability

There is "a very high bar for assessing municipal liability under *Monell [v. Department of Social Services*, 436 U.S. 658 (1978)]." *Young v. City of Providence ex rel Napolitano*, 404 F.3d 4, 26 (1st Cir. 2005). "The alleged municipal action at issue must constitute a 'policy or custom' attributable to the [municipality]." *Id.* (citation omitted). For a municipality to be liable, there must be an underlying constitutional harm. *Gianfrancesco*, 712 F.3d at 640 n.4. For all except the Fourth Amendment

violation, the Court has concluded that none survives dismissal.

The only remaining allegation that could trigger municipal liability is that Mr. Shane as town manager, acted as a policymaker for the town of Cumberland and "adopted a custom or policy permitting Defendant Longley's unwarranted searches and unauthorized entrance upon private, posted property." *2018 Compl.* ¶ 117. However, as the Court discusses next, there is no unqualified constitutional right to be free from municipal inspection when erecting a structure authorized by a municipal building permit.

### C.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Person v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Boudreau v. Lussier*, 901 F.3d 65, 75 (1st Cir. 2018). The issue here is whether the Copps have a clear right not to have their property subject to inspection without municipal officials first obtaining express prior permission when the Copps are constructing a residence pursuant to a municipal building permit, and whether a reasonable municipal official would have understood inspecting the property without their express prior permission to be unlawful. *See Brosseau v. Haugen,* 543 U.S. 194, 198-99 (2004) (per curiam).

The Defendants cite three cases that they say stand for the proposition that persons have a diminished expectation of privacy in houses under construction and

are subject to warrantless searches by municipal officials. *Defs.' Reply* at 6-7 (citing *Palmieri v. Lynch*, 392 F.3d 73, 83 (2d Cir. 2004); *Anobile v. Pelligrino*, 303 F.3d 107, 120 (2d Cir. 2001); *Shapiro,* 2005 U.S. Dist. LEXIS 43276, at *35). In response, the Copps cite *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) for the general proposition that the test of reasonableness under the Fourth Amendment is "not capable of precise definition or mechanical application," but they offer no caselaw for the proposition that a municipal official has no independent right to inspect a home under construction unless they obtain the permission of an objecting builder.

The Fourth Amendment vests individuals with the right to be free from "unreasonable searches and seizures." U.S. CONST., amend. IV. The Fourth Amendment's "'central requirement' is one of reasonableness." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). In determining the reasonableness of a search, "the intrusion on an individual's privacy interests is balanced against the search's 'promotion of legitimate governmental interest.'" *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001) (quoting *Maryland v. Buie*, 494 U.S. 325, 331 (1990)). Applying this principle, courts have routinely upheld warrantless searches of real property by governmental officials who enter onto the property in order to perform a legitimate governmental function. In *Widgren v. Maple Grove Township*, 429 F.3d 575 (6th Cir. 2005), the Sixth Circuit Court of Appeals rejected a Fourth Amendment claim against a town, when the town's assessor entered onto the curtilage of the residence despite a no-trespassing sign, took a photograph of the residence, and made

measurements of the residence for purposes of making a tax assessment. *Id.* at 581-86.

In *Artes-Roy v. City of Aspen*, 31 F.3d 958 (10th Cir. 1994), the Tenth Circuit Court of Appeals found there was no Fourth Amendment violation when a municipal building inspector actually entered a home in order to serve a stop work order. *Id.* at 960-63. Other courts have followed suit. *See Lawson v. Tehama Cty.*, 2:17–cv–01276–TLN–GGH, 2017 WL 5177835, at * 12, 2017 U.S. Dist. LEXIS 185536, at *30-33 (N.D. Cal. Nov. 8, 2017); *Conrad v. City of Berea*, 243 F. Supp. 3d 896, 906-07 (N.D. Ohio 2017) (no Fourth Amendment violation assuming defendants trespassed on plaintiffs' property because, in part, the level of intrusiveness for administrative investigations is different than for criminal investigations), *Manbeck v. Town of Lewisboro*, 05 Civ. 4576 (CLB)(GAY), 2008 U.S. Dist. LEXIS 109123, at *34 (S.D.N.Y. Mar. 4, 2008), *adopted & objection overruled*, 2008 U.S. Dist. LEXIS 109120 (Mar. 28, 2008), *aff'd*, 333 Fed. App'x 599 (2d Cir. 2009) (no Fourth Amendment violation when municipal wetlands inspector inspected plaintiffs' property in part because the plaintiffs had applied for a construction permit); *Bonneville v. Kitsap Cty.*, No. C06-5228RJB, 2007 U.S. Dist. LEXIS 9429, at *29-32 (W.D. Wash. Feb. 8, 2007) (upholding municipal warrantless heath inspections of residential property); *Gayda v. City of Nashua*, Civil No. 05-cv-244-JD, 2006 U.S. Dist. LEXIS 73465, at *7-11 (D.N.H. Oct. 2, 2006).

The Defendants are entitled to qualified immunity against the Copps' Fourth Amendment claims because their conduct did "not violate established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457

U.S. at 818. As the Court has construed it, the Complaint scantily alleges that the Defendants entered the curtilage of the Copp property to conduct a "road inspection." Determining if there is qualified immunity requires analyzing "the specific context of the case, not as a broad general proposition." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted). The specific context of this case is that municipal officers entered into the curtilage to check compliance with town-issued building permits. Generally, government officers may enter into the curtilage like any citizen and make observations without a warrant. *See Davis v. Charlstrom*, 595 Fed. App'x 627, 630 (7th Cir. 2014) (citing *Carroll v. Carman*, 135 S. Ct. 348, 351-52 (2014)); *Nikolas v. City of Omaha*, 605 F.3d 539, 545–46 (8th Cir. 2010); *United States v. LePage*, 477 F.3d 485, 488 (7th Cir. 2007); *Widgren*, 429 F.3d at 580 (6th Cir. 2005); *United States v. Hatfield*, 333 F.3d 1189, 1194 (10th Cir. 2003); *United States v. French*, 291 F.3d 945, 952–53 (7th Cir. 2002) (alterations in ordering)). Here, however, the individual Defendants were told by the Copps to ask for permission before entering the property and the property had no trespassing signs.

Moreover, the nature of the Copps' personal interest in the residence is not clarified by the allegations in the Complaint. To secure the protection of the Fourth Amendment, a person must demonstrate that he had a "constitutionally protected reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz* 389 U.S. at 360 (1967)). Whether a person has a constitutionally protected reasonable expectation of privacy depends on two factors: (1) whether the individual has manifested "a subjective expectation of privacy in the object of the

challenged search," and (2) whether "society is willing to recognize that expectation as reasonable." *Id.* at 211. The Copps claim that the residence was under construction; they nowhere claim that they were living in the residence when the Defendants performed their inspections. *See Compl.; See also Lawson*, 2017 U.S. Dist. LEXIS 185536, at *32 ("In the instant case it is clear that plaintiff maintained no 'home' on the property entered and 'searched'"). The reasonable expectation of privacy in a house under construction is less compelling than in a home under occupancy.

By contrast, municipalities have a legitimate interest in making sure their regulations and ordinances are followed. *See Martone Place, LLC v. City of Springfield*, No. 16-CV-30170-MAP, 2017 WL 5889222, at *17 (D. Mass. Nov. 29, 2017) (citation omitted); *see also Devines v. Maier*, 728 F.2d 876, 886 (7th Cir. 1984). In *Dunn*, the Supreme Court made clear that the four factors it annunciated to determine the extent of curtilage were "useful analytical tools only to the degree that . . . they bear upon the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." 480 U.S. at 301. Administrative and regulatory searches are generally less instructive than criminal searches -- WAYNE R. LAFAVE, 5 SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 10.1(b) (4th ed. 2004) -- and while the Defendants may have entered the curtilage to make observations to check permit compliance, these observations, as alleged, did not entail entering the home, or searching a private, personal effect. *United States v. Jones*,

565 U.S. 400, 406 (2012) (quoting *Katz*, 389 U.S. at 351 ("the Fourth Amendment protects people, not places")).

The Court concludes that the Defendants did not violate a clear right of the Copps. Even assuming there was a violation of a clear right, the Court could not conclude that the actions of Mr. Shane and Mr. Longley were unreasonable or "plainly incompetent." *See Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a person applies for a building permit, the applicant necessarily consents to municipal inspections to determine whether the permit is being complied with. *Bonneville*, 2007 U.S. Dist. LEXIS 9429, at *25 ("When the Plaintiff applied for a Building Clearance, he necessarily consented to site visits to evaluate the application and inspections to determine compliance"). Nor are municipal inspectors required to make their inspections only when the applicant permits them to do so. To assure compliance with building codes, inspections must be made periodically throughout the construction so that building code violations are not buried behind walls or underground. An applicant determined to skirt the requirement of the municipal building code and to avoid the increased cost of compliance could time inspections to escape detection.[26]

The Court concludes that the Defendants are entitled to qualified immunity, and because the allegations do not demonstrate that this is a "rare" case where government employees are entitled to qualified immunity, but the municipality is still liable, the Court concludes the town of Cumberland is not liable on the Copps'

---

[26] There is no allegation that the Defendants carried out the inspections at times or in a manner to harass or unduly inconvenience the Copps.

Fourth Amendment claim as well. *See Walker v. Waltham Hous. Auth.*, 44 F.3d 1042, 1047 (1st Cir. 1995) (citation omitted).

## D.     Maine Freedom of Access Act

The Defendants argue that "[t]he Complaint's allegations fail to establish that the Plaintiffs took a timely appeal of the alleged FOAA violation." *Defs.' Mot.* at 20. In their view, "[a]n appeal under Section 409(1) that is not timely filed should be dismissed." *Id.* at 19 (citing *Alexander v. Div. of Cmty. Servs.*, 556 A.2d 222, 223 (Me. 1989)). They contend that the timeliness of such an appeal affects this Court's subject matter jurisdiction, that it is the Copps' burden to show this Court has subject matter jurisdiction, and that they failed to do so. *Id.* at 19-20.

In apparent response,[27] the Copps cite *Morrison*, 323 F.3d at 925, for the proposition that the Court should not proceed under 12(b)(1) when the question of jurisdiction and the merits of the underlying action are intertwined as they argue is the case here; rather, the Copps say that the Court should evaluate the Defendants' argument as an attack on the merits. *Pls.' Opp'n* at 2-3.

"Maine's Freedom of Access Act establishes a general right of the public to inspect and copy public records." *Doyle v. Town of Falmouth*, 2014 ME 151, ¶ 8, 106 A.3d 1145 (citing 1 M.R.S. § 408–A). If a request for public records is denied, one may appeal that denial within thirty days to a Maine Superior Court. § 409(1).

---

[27]     In their reply, the Defendants argue that the Copps failed to address this argument as well as the viability of their FOAA claim, and therefore, the claim should be dismissed. *Defs.' Reply* at 1. They may be right. The Copps do not specifically state in their response whether their subject matter argument relying on *Morrison* encompasses their FOAA request. *Pls. Opp'n* at 2-3. Rather than default the Copps on this issue, because the Defendants argue that the Court lacks subject matter jurisdiction over the Copps' FOAA claim, the Court analyzes the Copps' argument as addressing their FOAA request.

"Jurisdiction over these appeals is thus exclusive in the Maine Superior Court." *Nzingoula v. Maine Dep't of Health & Human Servs.*, No. 2:15-CV-108-GZS, 2015 WL 10058317, at *2 (D. Me. Dec. 30, 2015) (citing *State v. Adams*, No. Civ. A. AP–00–53, 2000 WL 33675689, at *1 (Me. Super. Nov. 27, 2000)), *R. & R. adopted*, No. 2:15-CV-108-GZS, 2016 WL 589859 (D. Me. Feb. 11, 2016).

In *Morrison*, the Court of Appeals for the Eleventh Circuit addressed "when reviewing a defendant's motion to dismiss an [Family Medical Leave Act (FMLA)] action on grounds that the plaintiff was not an 'eligible employee' under the Act, should the district court review the motion using the standards applicable for Rule 12(b)(1) . . . or Rule 56." 323 F.3d at 920-21. There the plaintiff-appellant sued under the FMLA arguing that his employers engaged in unlawful retaliation, and that the District Court erred by relying on Rule 12(b)(1) in dismissing his claim given "that [his] eligible-employee status under the FMLA is an element of the underlying cause of action rather than a purely jurisdictional issue." *Id.* at 922, 924. The *Morrison* Court stated, "jurisdiction becomes intertwined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.* at 926 (citations omitted).[28]

The allegations in the Copps' FOAA count are remarkably thin:

142. Plaintiffs requested records from the Town of Cumberland pursuant to Maine's Freedom of Access Act. 1 M.R.S.A. § 400 *et seq.*
143. Defendant has denied Plaintiffs' FOAA request as defined in 1

---

[28] The Eleventh Circuit stated a 12(b)(1) motion can either be a "facial" or "factual" attack on jurisdiction. *Morrison*, 323 F.3d at 924 n.5. The former attacks the sufficiency of the allegations, whereas the latter "challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Id*

M.R.S.A. § 408-A(4).

144. Plaintiffs appeal their denial pursuant to 1 M.R.S.A. § 409.

145. Plaintiffs are entitled to remedies, including attorneys' fees, as set forth in the statute.

*2018 Compl.* ¶¶ 142-45.

The Defendants make a facial attack on the sufficiency of the Complaint as to the Copps' FOAA request because they argue the "allegations fail to establish that the Plaintiffs took a timely appeal of the alleged FOAA violation." *Defs.' Mot.* at 20. *Morrison* is distinguishable because the claim asserted here does not provide the basis for subject matter jurisdiction or is "a prime facie element for recovery", since the Maine Superior Courts enjoy exclusive jurisdiction over such appeals. *Nzingoula*, 2015 WL 10058317, at *2 (citing *Adams*, 2000 WL 33675689, at *1).

The Court agrees with the Defendants that a stand-alone FOAA count does not belong in federal court. The Maine statute makes it plain that the Superior Court of the state of Maine has exclusive jurisdiction over FOAA appeals. § 409(2) ("[A]ny person may appeal to any Superior Court in the State"). An appeal of a state administrative action to the federal court may raise *Rocker-Feldman*[29] concerns and, even if this Court could exercise supplemental jurisdiction over this state law claim, it declines to do so. *See* 28 U.S.C. § 1367(c).

The First Circuit has stated that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Camelio v. Am. Fed'n*,

---

[29]    *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983).

137 F.3d 666, 672 (1st Cir. 1998) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). The status of the Copps' FOAA appeal before removal to this Court is unclear. After dismissing all claims over which the Court had original jurisdiction, this Court previously remanded a FOAA claim where there was uncertainty as to the status of the FOAA claim. *See Collins v. Kennebec Cty. Jail*, No. 1:12-CV-00069-GZS, 2012 WL 4326191, at *7, 2012 U.S. Dist. LEXIS 133928, at *20-22 (D. Me. May 31, 2012), *aff'd*, No. 1:12-CV-69-GZS, 2012 WL 4325830, 2012 U.S. Dist. LEXIS 133923 (D. Me. Sept. 19, 2012). The Court remands the Copps' FOAA claim to the Cumberland County Superior Court.

## V. CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss (ECF No. 4) on all claims except the Copps' Freedom of Access Act claim. The Court REMANDS the Copps' Freedom of Access Act claim to the Cumberland County Superior Court for the state of Maine.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2018